UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JUNIPER ARTHURS and LYNNESA GILBERT,

Plaintiffs,

v.

ASANTE,

Defendant.

Case No. 1:26-cv-00915-CL

**OPINION AND ORDER**

---

**CLARKE,** United States Magistrate Judge.

Plaintiffs Juniper Arthurs and Lynnesa Gilbert ("Plaintiffs") filed this putative class action in Jackson County Circuit Court on behalf of themselves and all similarly situated current and former employees of Defendant Asante. The parties consent to the jurisdiction of a magistrate judge. ECF No. 15. Before the Court is Plaintiffs' Motion to Remand and for an award of attorney fees and costs. ECF No. 10. On September 15, 2026, the Court heard oral argument. The Court finds that Plaintiff's claims are preempted in part and Plaintiffs' Motion (ECF No. 10) is DENIED.

## LEGAL STANDARD

A defendant in a state court may remove a civil case to federal court when the case could have originally been brought in federal court. 28 U.S.C. §§ 1441, 1446(b). Removability is "to

be determined according to the plaintiff's pleading at the time of the petition or removal." *Pullman Co. v. Jenkins*, 305 U.S. 534, 537–38 (1939). "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). "The presumption against removal means that 'the defendant always has the burden of establishing that removal is proper.'" *Id.* (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

**BACKGROUND**

Defendant Asante operates hospitals and healthcare facilities in Oregon. Plaintiffs and the proposed class are Defendant's current and former employees. Plaintiffs and many of the proposed class members are subject to a collective bargaining agreement (the "CBA") between the Oregon Nurses Association ("ONA") and Defendant. The CBA governs, among other things, wages, premium pay, differential pay, rest breaks, meal breaks, and grievance procedures. Plaintiffs allege that Defendant engages in timekeeping and payroll practices that deprive Plaintiffs and other employees of their earned wages, as specified in the CBA. For example, Defendant has allegedly "engaged in a practice of 'rounding' employee work hours by using timekeeping software that automatically adjusts employee clock-in and clock-out times to the nearest quarter-hour increment." Notice of Removal, Ex. 1 (First Am. Compl. ("FAC")) ¶ 12, ECF No. 1-1. Plaintiffs further allege that "Defendant's rounding practice has caused hourly paid employees to routinely not be paid for their actual work times. As a result of this practice, Plaintiffs and members of the Proposed Class have not been paid all earned wages on some pay periods." *Id.* at ¶ 13.

On May 7, 2026, Defendant removed the case from Jackson County Circuit Court. Notice of Removal, ECF No. 1. In its Notice of Removal, Defendant asserted that the FAC raises

several issues requiring preemption under § 301 of the Labor Management Relations Act ("LMRA") 29 U.S.C. § 185(a). According to Defendant, those issues include but are "not limited to whether plaintiffs earned and were entitled to contractual premium pay for working consecutive shifts without a day off or consecutive weekends (*see e.g.*, FAC ¶ 14), or contractual additional pay related to rest or meal periods (*see e.g.*, FAC ¶ 16)." Notice of Removal ¶ 6. Defendant asserts that Plaintiffs' claims cannot be resolved without interpretation of Articles 6.1, 6.2, 6.3, and 6.6 of the CBA.

Article 6.1 describes entitlement to premium pay for working consecutive weekends: "A nurse who works on a non-scheduled weekend at the request of management will be paid at one and one-half (1 ½) times the nurse's regular rate of pay for all weekend hours worked." Arthurs Decl., Ex. 1 ("CBA") at 6, ECF No. 11-1.

Articles 6.2 and 6.3 describe entitlement to additional pay when a nurse is unable to take meal or rest breaks during a shift: "Each shift worked by a nurse will include one one-half hour meal break on the nurse's own time . . . [but] [i]f an RN misses a meal period, that time (thirty (30) minutes) will be paid as worked hours." *Id.* at 6. And "an RN who is scheduled to work and works six (6) hours or more and misses his/her meal break will be paid double time for the missed meal break." *Id.* Article 6.3 provides that RNs will receive either two or three 15-minute breaks depending on the length of their shifts, and that "[i]f an RN misses a break period, they will be paid the regular hourly wage for an additional one-fourth (1/4) of an hour for the missed break period." *Id.* at 6–7.

Last, Article 6.6 describes entitlement to premium pay for working more than five full consecutive shifts: "A nurse who works more than five (5) consecutive full shifts (12-hour scheduled RNs) . . . without a day off will be eligible for continuous days of work premium." *Id.*

at 9. "A full shift for eligibility shall be the number of hours a nurse is normally scheduled to work." *Id.* A nurse who is eligible for continuous days of work premium "will be compensated at the rate of time and-a-half for each day worked or portion thereof until granted a day off." *Id.* at 10.

**DISCUSSION**

Plaintiffs move to remand, arguing the Court lacks federal jurisdiction because their claims arise solely under Oregon law. Defendant responds that the Court has federal jurisdiction, and should not remand, because Plaintiffs' claims are preempted by § 301 of the LMRA. The Court finds that Plaintiffs' claims are preempted in part.

Under a narrow exception to the well-pleaded complaint rule, federal-question jurisdiction exists when a federal law completely preempts any of the state law claims in the complaint. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 5–8 (2003). "Whether an employment class action is preempted by the LMRA is analyzed under a two-prong analysis." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). First, the court determines whether the plaintiff seeks to vindicate a right that arises solely by virtue of a CBA. *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016). If the asserted right arises solely by virtue of a CBA, then the claim is preempted and the analysis ends there. *Burnside*, 491 F.3d at 1059–60. If the right is actionable under state law, regardless of a CBA, then the analysis proceeds to the second step. *Kobold*, 832 F.3d at 1032.

Under the second step, the court determines whether resolution of the state law claim "is nevertheless substantially dependent on analysis of a collective-bargaining agreement." *Burnside*, 491 F.3d at 1059 (internal quotation marks omitted). A claim is "substantially dependent" when the court must "interpret," as opposed to merely "look to," a CBA. *Id.* at 1060.

"Where there is such substantial dependence, the state law claim is preempted by § 301. If there is not, then the claim can proceed under state law." *Kobold*, 832 F.3d at 1033 (footnote omitted).

The Court proceeds with each step of the analysis below, and finds that Plaintiffs' claims are preempted in part.

## I. Whether the Asserted Right Arises Solely by Virtue of the CBA

Whether the plaintiff's asserted right arises solely by virtue of a CBA is determined by considering "the *legal* character of a claim . . . and not whether a [CBA] grievance arising from precisely the same set of facts could be pursued." *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)) (internal quotation marks omitted). The claim is only preempted by § 301 if "founded directly on rights created by" the CBA. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987).

For example, "[i]n *Lueck*, the only reason the plaintiff had an insurance claim at all was because the CBA created an obligation on the part of the employer to provide the insurance benefit in question." *Burnside*, 491 F.3d at 1065 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 217 (1985)). The plaintiff's claim was therefore preempted at the first step of the analysis. *Lueck*, 471 U.S. at 217.[1] In contrast, in *Alaska Airlines Inc.*, the plaintiff's claim arose independently of the CBA, and was not preempted, because the claim invoked a state law right to use banked vacation days that applied to all workers, regardless of whether the workers were covered by a CBA. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 927 (9th Cir. 2018).

Here, Plaintiffs' wage claims involve two categories of pay specified in the CBA: (1) shift premiums and differentials; and (2) premiums related to meal period and rest breaks.

---

[1] The Supreme Court went on to explain that the plaintiff's claim was preempted under the second step of the analysis as well. *Lueck*, 471 U.S. at 218.

Defendant argues that Plaintiffs' claims are preempted at step one of the analysis because their right to premiums, differentials, and breaks are derived from the CBA, not from state law. The Court disagrees.

Plaintiffs bring four claims for relief: (1) equitable accounting of wages; (2) failure to pay all wages at regular paydays (ORS 652.120); (3) failure to pay all wages at termination (ORS 652.140 & ORS 652.150); and (4) withholding wages without authorization (ORS 652.610 & ORS 652.615). Notice of Removal Ex. 1, ¶¶ 21–43, 46 ("FAC"), ECF No. 1. Similar to *Alaska Airlines Inc.*, Plaintiffs' claims arise under state law and may be invoked regardless of whether a worker is covered by a CBA. Plaintiffs seek to vindicate their rights under Oregon law for accurate and timely payment of "the wages due and owing to them." ORS 652.120. Plaintiffs' CBA merely provides the means for calculating how much a worker has earned. The fact that the CBA contains meal and break provisions that are more generous than the rules prescribed by the Oregon Bureau of Labor and Industries does not waive Plaintiffs' rights under Oregon law to accurate and timely payment of wages owed. The rights Plaintiffs seek to vindicate do not exist solely because of a CBA, and the Court proceeds to the second step of the *Burnside* analysis.

## II. Whether the State Law Right is "Substantially Dependent" on the Terms of the CBA

Determining whether the state law right asserted by the plaintiff is "substantially dependent" on the terms of the CBA is not a bright-line test. *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 691 (9th Cir. 2001), *as amended* (Aug. 27, 2001). At the second step of the preemption analysis, courts are directed to decide whether the claim can be resolved by merely "looking to" versus "interpreting" the CBA. *Burnside*, 491 F.3d at 1060. A claim is only preempted if it cannot be resolved without interpreting the meaning of a CBA provision. *Id.* "'Interpretation' is construed narrowly; 'it means something more than "consider," "refer to," or

"apply.'" *Alaska Airlines Inc.*, 898 F.3d at 921 (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000)).

To "help[] further sharpen the look-to/interpret distinction[,]" the Ninth Circuit in *McCray* examined its decision in *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024 (9th Cir. 2016), explaining:

> *Kobold* considered a claim brought by an operating nurse who sought to receive time-and-a-half pay for certain "extra" shifts she'd worked. The nurse asserted claims under Oregon state law, which we assumed arose independently from the CBA (thus satisfying step one of *Burnside*). We nevertheless found that § 301 preempted her claims because resolving her case would require interpretation of the CBA. This was so because before the court "could calculate the total *amount* Kobold is owed, it must determine which of the shifts she worked qualified for premium pay." And the definition of which shifts qualified for premium pay was contained not within the state law under which the action arose, but rather was based on the terms of the CBA. Because there was a live dispute over the meaning of a particular provision of the relevant CBA, resolving the case would mean that the court "must interpret, not just refer to or look at" the agreement. Specifically, the CBA did not "directly and clearly explain what constitutes a 'change of schedule,' nor how an agreement between [the hospital] and a nurse is to be made." Since interpretation of the CBA's terms would be necessary, preemption was appropriate.

*McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1012 (9th Cir. 2018) (internal citations omitted).

Put differently, preemption is not appropriate unless there is "an active dispute over 'the meaning of contract terms.'" *Alaska Airlines Inc.*, 898 F.3d at 921 (quoting *Livadas*, 512 U.S. at 124). For example, in *Burnside*, the parties disputed whether the employees were entitled under state law for time spent travelling to the jobsite. *Burnside*, 491 F.3d at 1074. The Ninth Circuit explained that resolving that issue did not indicate a dispute about which premium pay provisions in the CBA "would apply to any or all hours of transportation, *if* those hours are compensable." *Id.* Holding, the plaintiff's claims were not preempted because the basic legal issue could be resolved without interpreting the CBA. *Id.*

Here, Plaintiffs' claims present a credible dispute over the meaning of "full shift" in Article 6.6 of the CBA. Unlike in *Burnside*, where the basic legal issue was whether the plaintiff was entitled to transportation pay under state law and the CBA could later provide the damages calculation for unpaid hours of travel, here, the legal issue raised by Plaintiffs is whether Defendant "maintains a practice of routinely failing to accurately calculate and pay all premiums and differential pay." FAC ¶ 15, ECF No. 1-1. That issue, as it relates to premium pay for working consecutive full shifts, cannot be resolved without interpreting Article 6.6 of the CBA.

Article 6.6 of the CBA provides:

> A nurse who works more than five (5) consecutive full shifts (12-hour scheduled RNs) or six (6) consecutive full shifts (eight (8) or ten (10) hour scheduled RNs) without a day off will be eligible for continuous days of work premium.
>
> A full shift for eligibility shall be the number of hours a nurse is normally scheduled to work. If a nurse is normally scheduled to work shifts of varying lengths, a full shift will be the length of the shortest scheduled shift (minimum of eight (8) hours).
>
> . . .
>
> Once eligible for continuous days of work premium, a nurse will be compensated at the rate of time-and-a-half for each day worked or portion thereof until granted a day off. Hours worked over forty (40) in a workweek that also qualify for the consecutive day's premium will be paid at double time.

CBA at 9–10.

Defendant credibly asserts that under Article 6.6, there is room for debate about whether an employee who clocks in a few minutes late or leaves a few minutes early has worked "the number of hours" they are normally scheduled to work. This ambiguity, when calculating eligibility for premium pay, is foreseeably amplified by Defendant's alleged practice of rounding employee work hours to the nearest quarter hour. In support of its proffered interpretation argument, Defendant also relies on the declaration of its Director of Employee & Labor Relations who stated in a sworn declaration that "the meaning of the phrase 'consecutive full shifts' in Article 6.6 of the CBA" was debated during the grievance process between Plaintiffs'

ONA union and Defendant. Payton Decl. ¶ 6, ECF No. 13. Defendant's interpretation of the CBA and resulting pay practices may prove to have been unlawful, but its "proffered . . . argument" on the need to interpret the CBA to resolve the dispute reaches a "reasonable level of credibility." *Cramer*, 255 F.3d at 692. This case is therefore similar to *Kobold*, "because before the court 'c[an] calculate the total *amount* [Plaintiff] is owed, it must determine which of the shifts she worked qualified for premium pay.'" *McCray*, 902 F.3d at 1012 (quoting *Kobold*, 832 F.3d at 1035). The Court cannot determine which shifts qualify for premium pay without interpreting the meaning of a "full shift" under Article 6.6 of the CBA. Plaintiffs' claims are preempted under § 301 as they relate to Defendant's pay practices when calculating premium pay under Article 6.6 of the CBA.

However, Defendant's proffered interpretation arguments about Articles 6.1, 6.2, and 6.3 of the CBA lack reasonable credibility. Article 6.1 describes entitlement to premium pay for working consecutive weekends, and Articles 6.2 and 6.3 describe entitlement to additional pay when a nurse is unable to take meal or rest breaks during a shift. Defendant fails to cite evidence in support of its arguments that these provisions are actively in dispute, and the hypotheticals it presents are either purely speculative or easily resolved by looking to the unambiguous language of the relevant CBA provision. *See Cramer*, 255 F.3d at 691 ("alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim"). Plaintiffs' claims, as they relate to working consecutive weekends and meal or rest periods under Articles 6.1, 6.2, and 6.3 of the CBA are not preempted.

///

///

///

"Notably, the result of preemption at the second step is generally not the extinguishment of the state law claim." *Alaska Airlines Inc.*, 898 F.3d at 922.[2] Here, Plaintiffs' claims are only preempted as they relate to Defendant's pay practices when calculating premium pay under Article 6.6 of the CBA.

## CONCLUSION

For the reasons above, Plaintiffs' Motion to Remand and for an award of attorneys fees and costs (ECF No. 10) is DENIED.

DATED this 14 day of October, 2026.

MARK D. CLARKE
United States Magistrate Judge

[2] After finding that a plaintiff's claims are preempted in part, courts have broad discretion on deciding how the case should proceed. *See Cramer*, 255 F.3d at 691 n.2 (noting different approaches after finding that CBA interpretation is required); *Kobold*, 832 F.3d at 1042 (remanding for district court to decide whether to exercise supplemental jurisdiction over non-preempted claims); *Burnside*, 491 F.3d at 1074 n.19 (Courts are "able to devise processes to preserve the preeminent role of the CBAs' dispute resolution processes to address the discrete dispute then arising."). That issue, however, is not before the Court.